IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
CIVIL DIVISION

STEPHEN G. MEYLAN

Plaintiff,

8:04-cv-1629-T-27TBM

vs.

CASE NO. 2004 CA 5882 NC

KAWASAKI MOTORS CORP.,
U.S.A., a foreign corporation;
KAWASAKI MOTORS
MANUFACTURING CORP., U.S.A.,
a foreign corporation; and
GREAT DANE POWER EQUIPMENT,
INC., a foreign corporation

FILED
JUL 14 2004
Date             Time
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA



RECEIVED
JUN 29 2004
ROTH, POWELL, PEARSON & HOSLEY

Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Stephen G. Meylan, sues Defendants and each of them and alleges:

### GENERAL ALLEGATIONS

1. This is an action for damages wherein the controversy exceeds $15,000, exclusive of interest, costs, and attorney fees.

2. At all times material hereto, Plaintiff Stephen G. Meylan has resided in Sarasota County, Florida.

3. Defendant Great Dane Power Equipment, Inc. at all times material hereto was an Indiana corporation engaged in the design, manufacture, sale and distribution of gasoline powered riding lawn mowers.

4. At all times material hereto, Defendant Great Dane Power Equipment, Inc. was authorized to do business in Florida and, in fact was doing business in the State of Florida and Sarasota County, Florida.

5. Defendant Kawasaki Motors Corp., U.S.A. at all times material hereto was a Delaware Corporation whose headquarters were located at 9950 Jeronimo Road, Irvine, CA 92618,

EXHIBIT "B"

engaged in the design, manufacture, sale, and distribution of motorcycles, personal watercraft, ATV's and components, industrial robots, light rail cars and small gasoline engines..

6. Defendant Kawasaki Motors Corp., U.S.A. at all times material hereto was, in fact, doing business in the State of Florida and Sarasota County, Florida.

7. Defendant Kawasaki Motors Manufacturing Corp., U.S.A. at all times material hereto was a Nebraska corporation engaged in the design, manufacture, sale, and distribution of motorcycles, personal watercraft, ATV's and components, industrial robots, light rail cars and small gasoline engines.

8. Defendant Kawasaki Motors Manufacturing Corp., U.S.A. at all times material hereto was doing business in the State of Florida and Sarasota County, Florida.

9. This court has personal jurisdiction over Defendant Great Dane Power Equipment, Inc. pursuant to Section 48.193, Florida Statutes, because:

    a. Defendant has, at all times relevant to this cause of action, through its agents, officers, and representatives, operated, conducted, engaged in and carried on a business venture in Florida which enabled or assisted Defendant in designing, manufacturing, and selling the subject product which gave rise to this action;

    b. Defendant has committed tortious acts and omissions in Florida by selling and disseminating to the public the defective and dangerous subject product, in its original form; failing to make reasonable tests and take reasonable precautions or to exercise reasonable care to adequately or sufficiently protect Plaintiff, Stephen G. Meylan, from the injuries that result from the ordinary use of the subject product;

    c. Defendant has caused injury to the Plaintiff, Stephen G. Meylan, in Florida, which arose out of the acts or omissions, which occurred inside and outside of Florida namely, the design, manufacture, or sale of the dangerous and defective subject product. The subject product was commonly used in the ordinary commerce; and

    d. Defendant has engaged in substantial and not isolated activities within Florida by maintaining stores, offices, employees, or registered agents in Florida, selling its products in Florida, advertising its products in Florida, or entering into contracts in Florida.

10. This court has personal jurisdiction over Defendant Kawasaki Motors Corp., U.S.A. pursuant to Section 48.193, Florida Statutes, because:

   a. Defendant has, at all times relevant to this cause of action, through its agents, officers, and representatives, operated, conducted, engaged in and carried on a business venture in Florida which enabled or assisted Defendant in designing, manufacturing, and selling the subject product which gave rise to this action;

   b. Defendant has committed tortious acts and omissions in Florida by selling and disseminating to the public the defective and dangerous subject product, in its original form; failing to make reasonable tests and take reasonable precautions or to exercise reasonable care to adequately or sufficiently protect Plaintiff, Stephen G. Meylan, from the injuries that result from the ordinary use of the subject product;

   c. Defendant has caused injury to the Plaintiff, Stephen G. Meylan, in Florida, which arose out of the acts or omissions, which occurred inside and outside of Florida namely, the design, manufacture, or sale of the dangerous and defective subject product. The subject product was commonly used in the ordinary commerce; and

   d. Defendant has engaged in substantial and not isolated activities within Florida by maintaining stores, offices, employees, or registered agents in Florida, selling its products in Florida, advertising its products in Florida, or entering into contracts in Florida.

11. This court has personal jurisdiction over Defendant Kawasaki Motors Manufacturing Corp., U.S.A. pursuant to Section 48.193, Florida Statutes because

   a. Defendant has, at all times relevant to this cause of action, through its agents, officers, and representatives, operated, conducted, engaged in and carried on a business venture in Florida which enabled or assisted Defendant in designing, manufacturing, and selling the subject product which gave rise to this action;

   b. Defendant has committed tortious acts and omissions in Florida by selling and disseminating to the public the defective and dangerous subject product, in its original form; failing to make reasonable tests and take reasonable precautions or to exercise reasonable care to adequately or sufficiently protect Plaintiff, Stephen G. Meylan, from the injuries that result from the ordinary use of the subject product;

   c. Defendant has caused injury to the Plaintiff, Stephen G.

    Meylan, in Florida, which arose out of the acts or omissions, which occurred inside and outside of Florida namely, the design, manufacture, or sale of the dangerous and defective subject product. The subject product was commonly used in the ordinary commerce; and

  d. Defendant has engaged in substantial and not isolated activities within Florida by maintaining stores, offices, employees, or registered agents in Florida, selling its products in Florida, advertising its products in Florida, or entering into contracts in Florida.

12. Plaintiff Stephen G. Meylan purchased a new Great Dane Chariot riding lawn mower in Sarasota County, Florida from Sarasota Chain Saw, 4511 Clark Road, Sarasota, Florida in late 1999.

13. The riding lawn mower in the previous paragraph had, as a component, a 23 horsepower gasoline engine designed, manufactured, sold and distributed by Kawasaki Motors, U.S.A. and Kawasaki Motors Manufacturing Corp., U.S.A.

14. The Great Dane Chariot riding lawn mower purchased by Plaintiff Stephen G. Meylan included a "muffler" designed, manufactured, sold, and distributed by Kawasaki Motors, U.S.A. and Kawasaki Motors Manufacturing Corp., U.S.A.

15. The Great Dane Chariot riding lawn mower purchased by Plaintiff Stephen G. Meylan included a "plastic" gasoline tank with a "plastic" filler neck and a "plastic" cap.

16. The gasoline tank was located under the operator's seat. The tank's filler neck opening and cap were located in very close proximity to the outlet of the muffler.

17. On June 17, 2000, Plaintiff was properly engaged in the addition of gasoline from a "plastic" gasoline container which had a "plastic" spout.

18. The actions of Plaintiff Stephen G. Meylan in adding gasoline to the riding lawnmower was being done in compliance with the Great Dane owners' manual and operating instructions.

19. Without warning the gasoline vapors from the mower's fuel tank and the gasoline container and spout were ignited and burst into flames causing serious bodily injury including severe burns to his left hand, left forearm, left elbow as well as other burns and injuries and suffered greatly due to pain associated with his injuries; incurred hospital, doctor, nursing, and

prescription bills; and has lost part of his ability to enjoy life and its activities.

20. Plaintiff's injuries are continuing, permanent, and predispose him to sustain future medical and hospital expenses, past and future, loss of income and the ability to earn money in the future in addition to sustaining future pain and suffering, ability to enjoy life and its activities.

21. All conditions precedent to the filing of this action have occurred.

## COUNT I
### STRICT LIABILITY AGAINST GREAT DANE POWER EQUIPMENT, INC.

22. Plaintiff, Stephen G. Meylan, adopts and restates paragraphs 1 through 21 as though fully set forth herein.

23. Defendant Great Dane Power Equipment, Inc. placed the lawnmower in the general stream of commerce where Plaintiff, Stephen G. Meylan eventually purchased it.

24. At all times relevant, Great Dane Power Equipment, Inc. was in the business of designing, manufacturing, testing, assembling, planning, engineering, constructing, building, inspecting, distributing and selling riding lawnmowers, including the subject product, to be used by the general public and Plaintiff Stephen G. Meylan. The subject riding lawnmower was defectively designed, manufactured, tested, assembled, planned, engineered, constructed, built, inspected, distributed, and sold by Great Dane Power Equipment, Inc. and the various defendants and was unreasonably dangerous when put to its ordinary and foreseeable uses, which included mowing Plaintiff's lawn and refueling such as described herein above in this Complaint.

25. Great Dane Power Equipment, Inc. knew that the subject product would be used, and was used, without inspection by Stephen G. Meylan for the specific defects that caused its fire or explosion.

26. At all times material, Great Dane Power Equipment, Inc. knew that prudent users and owners of its riding lawnmowers, including the subject product, would not appreciate that it was

dangerous and hazardous to add fuel, and that such a practice, while necessary to the use of the subject product, could cause an explosion without warning, despite using all known protections and testing methods, and cause serious and permanent injuries such as those suffered by Plaintiff Stephen G. Meylan.

27. Even though Defendant Great Dane Power Equipment, Inc. knew that users and owners of its riding lawnmowers, such as Stephen G. Meylan, would and could not appreciate the hazard associated with adding fuel to the gasoline tank, in fact Great Dane Power Equipment, Inc. invited and required such people as Stephen G. Meylan to add fuel to the gasoline tank. At the same time, Great Dane Power Equipment, Inc. failed to provide adequate warning and instructions to those adding fuel to the gasoline tank about the defective and unreasonably dangerous construction of the riding lawnmower, which could and in fact did cause substantial permanent injury to Plaintiff.

28. At the time and place of the sale and distribution of the subject riding lawnmower and its component parts were defective and unsafe for their intended purpose in that gasoline vapors resulting from adding gasoline to the mower's tank and the gasoline tank of the mower could be ignited, failed to provide adequate cautions, warnings or instructions pertaining to adding gasoline, and that said defects and dangerous and hazardous conditions could cause substantial permanent injuries.

29. The subject product was far more dangerous than an ordinary consumer would expect and was unsuitable for the purpose for which it was designed.

30. Stephen G. Meylan was unaware of the dangerous propensities and defective condition of the subject product.

31. The subject product was intended for use in mowing lawns and grasses, which necessarily requires regularly adding gasoline to the mower's gasoline tank. In adding gasoline to the mower's gasoline tank, Stephen G. Meylan relied upon the safety of the subject lawnmower.

32. The subject riding lawnmower, sold or distributed by Great Dane Power Equipment, Inc., that injured Stephen G. Meylan was in the same defective condition as when it left Great

Dane Power Equipment, Inc.'s control and custody.

33. As a direct and proximate cause of the defective nature of the subject product, and Defendant's failure to warn of the defects, Plaintiff Stephen G. Meylan has suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. These losses are permanent and continuing in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff Stephen G. Meylan demands judgment against Defendant Great Dane Power Equipment, Inc. for compensatory damages, costs, interest, and any further relief this Court deems just and proper.

## COUNT II
### NEGLIGENCE AGAINST GREAT DANE POWER EQUIPMENT, INC.

34. Plaintiff Stephen G. Meylan adopts and restates paragraphs 1 through 21 as though fully set forth herein.

35. When purchased and used by Stephen G. Meylan, the subject product was in its original state and in the same defective condition that it was in when Great Dane Power Equipment, Inc. sold or delivered it.

36. At all times relevant, Stephen G. Meylan used the subject product for its intended purpose and as directed. The subject product was at all times properly maintained, tested, and used by Stephen G. Meylan.

37. At all times relevant, Defendant Great Dane Power Equipment, Inc. undertook activities to aggressively advertise, market, and sell the subject product.

38. Great Dane Power Equipment, Inc. as the manufacturer, seller or distributor of the subject product, owed a duty to Plaintiff to exercise reasonable care. That duty included, but was not limited to, exercising reasonable care by:

    a. inspecting the subject product to ensure that it was reasonably safe and free from defects;

    b.    adequately testing the subject product;

    c.    adequately warning of the subject product's dangerous propensities;

    d.    warning of any health hazards or dangers associated with the use of the subject product; and

    e.    using reasonable care in testing, monitoring, distributing and selling the subject product.

39. Great Dane Power Equipment, Inc., as the manufacturer, seller or distributor of the subject product, breached its duties owed to Plaintiff by negligently and carelessly:

    a)    failing to inspect the subject product to ensure that it was reasonably safe and free of defects;

    b)    failing to adequately warn of the subject product's dangerous propensities;

    c)    failing to monitor the subject product and its uses in the scientific, medical community and the general population;

    d)    failing to warn of any health hazards or dangers associated with the use of the subject product; and

    e)    failing to use reasonable care in testing, monitoring, distributing, and selling the subject product.

40. Great Dane Power Equipment, Inc. knew or should have reasonably foreseen that its wrongful acts and omissions would injure Plaintiff.

41. As a direct and proximate result of the acts and omissions of Defendant Great Dane Power Equipment, Inc., as described herein, Plaintiff Stephen G. Meylan has suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. These losses are permanent and continuing in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff Stephen G. Meylan demands judgment against Defendant Great Dane Power Equipment, Inc. for compensatory damages, costs, interest and any further relief this Court deems just and proper.

## COUNT III

## STRICT LIABILITY AGAINST KAWASAKI MOTORS CORP., U.S.A.

42. Plaintiff Stephen G. Meylan adopts and restates paragraphs 1 through 21 as though fully set forth herein.

43. Defendant Kawasaki Motors Corp., U.S.A. placed its gasoline engine, muffler and other component parts in the general stream of commerce where Plaintiff Stephen G. Meylan eventually purchased them.

44. At all times relevant, Kawasaki Motors Corp., U.S.A. was in the business of designing, manufacturing, testing, assembling, planning, engineering, constructing, building, inspecting, distributing and selling gasoline engines, mufflers, and component parts, including the subject products, to be used by the general public and Plaintiff Stephen G. Meylan. The subject gasoline engine, muffler and components were defectively designed, manufactured, tested, assembled, planned, engineered, constructed, built, inspected, distributed, and sold by Kawasaki Motors Corp., U.S.A. and the various defendants and were unreasonably dangerous when put to their ordinary and foreseeable uses, which included adding gasoline to the riding lawnmower as described herein above in this Complaint.

45. Defendant Kawasaki Motors Corp., U.S.A. knew that the subject products would be used and were used, without inspection by Stephen G. Meylan for the specific defects that caused its fire or explosion.

46. At all times material, Defendant Kawasaki Motors Corp., U.S.A. knew that prudent users and owners of its engine, muffler, and component parts, including the subject products, would not appreciate that it was dangerous and hazardous to add fuel to the mower's gasoline tank, and that such a practice, while necessary to the use of the subject products, could cause the gasoline vapors to explode and catch fire without warning, despite using all known protections and testing methods, and cause serious and permanent injuries such as those suffered by Plaintiff Stephen G. Meylan.

47. Even though Defendant Kawasaki Motors Corp., U.S.A. knew that users and owners of its

gasoline engines, mufflers and component parts such as Stephen G. Meylan would and could not appreciate the hazard associated with adding gasoline to the lawnmower's gas tank which provided the fuel for the engine, in fact Defendant Kawasaki Motors Corp., U.S.A. invited and in fact required such people as Stephen G. Meylan to add gasoline to the lawnmower's gas tank. At the same time, Defendant Kawasaki Motors Corp., U.S.A. failed to provide adequate warning and instructions to those adding gasoline to the lawnmower's gas tank about the defective and unreasonably dangerous construction of the gasoline engines, mufflers and component parts, which could and in fact did cause substantial permanent injury to Plaintiff.

48. At the time and place of the sale and distribution of the subject engine, muffler and component parts by Kawasaki Motors Corp., U.S.A. for inclusion into the Great Dane Chariot riding lawnmower and at the time of the explosion and fire the engine, muffler, and component parts were defective and unsafe for their intended purpose in that they could cause or contribute to the explosion and fire, failed to provide adequate cautions, warnings or instructions regarding the addition of gasoline to the lawnmower's tank and that such defects and dangerous and hazardous conditions could cause substantial permanent injury.

49. The subject products were far more dangerous than an ordinary consumer would expect and were unsuitable for the purpose for which they were designed.

50. Plaintiff Stephen G. Meylan was unaware of the dangerous propensities and defective condition of the specific subject products.

51. The subject products were intended for use in mowing lawns and grasses which necessarily requires adding fuel to the lawnmower's gasoline tank. In filling the tank, Stephen G. Meylan relied upon the safety of the subject products.

52. The engine, muffler, and component parts sold or distributed by Defendant Kawasaki Motors Corp., U.S.A. that injured Stephen G. Meylan were in the same defective condition as when they left Kawasaki Motors Corp., U.S.A.'s control and custody.

53. As a direct and proximate cause of the defective nature of the subject products, and

Defendant's failure to warn of the defects, Plaintiff Stephen G. Meylan has suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. These losses are permanent and continuing in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff Stephen G. Meylan demands judgment against Defendant Kawasaki Motors Corp., U.S.A. for compensatory damages, costs, interest and any further relief this Court deems just and proper.

## COUNT IV
### NEGLIGENCE AGAINST KAWASAKI MOTORS CORP., U.S.A.

54. Plaintiff Stephen G. Meylan adopts and restates paragraphs 1 through 21 as though fully set forth herein.

55. When purchased and used by Stephen G. Meylan, the subject products were in their original state and in the same defective condition that they were in when Kawasaki Motors Corp., U.S.A. sold or delivered them.

56. At all times relevant, Stephen G. Meylan used the subject products for their intended purpose and as directed. The subject products were at all times properly maintained, tested, and used by Stephen G. Meylan.

57. At all times relevant, Defendant Kawasaki Motors Corp., U.S.A. undertook activities to aggressively advertise, market, and sell the subject products.

58. Kawasaki Motors Corp., U.S.A. as the manufacturer, seller or distributor of the subject products, owed a duty to Plaintiff to exercise reasonable care. That duty included, but was not limited to, exercising reasonable care by:

    a. inspecting the subject products to ensure that they were reasonably safe and free from defects;

    b. adequately testing the subject products;

    c. adequately warning of the subject products' dangerous propensities;

    d.    warning of any health hazards or dangers associated with the use of the subject products; and

    e.    using reasonable care in testing, monitoring, distributing and selling the subject products.

59. Kawasaki Motors Corp., U.S.A.., as the manufacturer, seller or distributor of the subject products, breached its duties owed to Plaintiff by negligently and carelessly:

    a)    failing to inspect the subject products to ensure that they were reasonably safe and free of defects;

    b)    failing to adequately warn of the subject products' dangerous propensities;

    c)    failing to monitor the subject products and their uses in the scientific, medical community and the general population;

    d)    failing to warn of any health hazards or dangers associated with the use of the subject products; and

    e)    failing to use reasonable care in testing, monitoring, distributing, and selling the subject products.

60. Kawasaki Motors Corp., U.S.A.. knew or should have reasonably foreseen that its wrongful acts and omissions would injure Plaintiff.

61. As a direct and proximate result of the acts and omissions of Defendant Kawasaki Motors Corp., U.S.A., as described herein, Plaintiff Stephen G. Meylan has suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. These losses are permanent and continuing in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff Stephen G. Meylan demands judgment against Defendant Kawasaki Motors Corp., U.S.A. for compensatory damages, costs, interest and any further relief this Court deems just and proper.

## COUNT V

### STRICT LIABILITY AGAINST KAWASAKI MOTORS MANUFACTURING CORP., U.S.A.

62. Plaintiff Stephen G. Meylan adopts and restates paragraphs 1 through 21 as though fully set forth herein.

63. Defendant Kawasaki Motors Manufacturing Corp., U.S.A. placed its gasoline engine, muffler and other component parts in the general stream of commerce where Plaintiff Stephen G. Meylan eventually purchased them.

64. At all times relevant, Kawasaki Motors Manufacturing Corp., U.S.A. was in the business of designing, manufacturing, testing, assembling, planning, engineering, constructing, building, inspecting, distributing and selling gasoline engines, mufflers, and component parts, including the subject products, to be used by the general public and Plaintiff Stephen G. Meylan. The subject gasoline engine, muffler and components were defectively designed, manufactured, tested, assembled, planned, engineered, constructed, built, inspected, distributed, and sold by Kawasaki Motors Manufacturing Corp., U.S.A. and the various defendants and were unreasonably dangerous when put to their ordinary and foreseeable uses, which included adding gasoline to the riding lawnmower as described herein above in this Complaint.

65. Defendant Kawasaki Motors Manufacturing Corp., U.S.A. knew that the subject products would be used and were used, without inspection by Stephen G. Meylan for the specific defects that caused its fire or explosion.

66. At all times material, Defendant Kawasaki Motors Manufacturing Corp., U.S.A. knew that prudent users and owners of its engine, muffler, and component parts, including the subject products, would not appreciate that it was dangerous and hazardous to add fuel to the mower's gasoline tank, and that such a practice, while necessary to the use of the subject products, could cause the gasoline vapors to explode and catch fire without warning, despite using all known protections and testing methods, and cause serious and permanent injuries such as those suffered by Plaintiff Stephen G. Meylan.

67. Even though Defendant Kawasaki Motors Manufacturing Corp., U.S.A. knew that users and owners of its gasoline engines, mufflers and component parts such as Stephen G. Meylan would and could not appreciate the hazard associated with adding gasoline to the lawnmower's gas tank which provided the fuel for the engine, in fact Defendant Kawasaki Motors Manufacturing Corp., U.S.A. invited and in fact required such people as Stephen G. Meylan to add gasoline to the lawnmower's gas tank. At the same time, Defendant Kawasaki Motors Manufacturing Corp., U.S.A. failed to provide adequate warning and instructions to those adding gasoline to the lawnmower's gas tank about the defective and unreasonably dangerous construction of the gasoline engines, mufflers and component parts, which could and in fact did cause substantial permanent injury to Plaintiff.

68. At the time and place of the sale and distribution of the subject engine, muffler and component parts by Kawasaki Motors Manufacturing Corp., U.S.A. for inclusion into the Great Dane Chariot riding lawnmower and at the time of the explosion and fire the engine, muffler, and component parts were defective and unsafe for their intended purpose in that they could cause or contribute to the explosion and fire, failed to provide adequate cautions, warnings or instructions regarding the addition of gasoline to the lawnmower's tank and that such defects and dangerous and hazardous conditions could cause substantial permanent injury.

69. The subject products were far more dangerous than an ordinary consumer would expect and were unsuitable for the purpose for which they were designed.

70. Plaintiff Stephen G. Meylan was unaware of the dangerous propensities and defective condition fo the specific subject products.

71. The subject products were intended for use in mowing lawns and grasses which necessarily requires adding fuel to the lawnmower's gasoline tank. In filling the tank, Stephen G. Meylan relied upon the safety of the subject products.

72. The engine, muffler, and component parts sold or distributed by Defendant Kawasaki Motors Manufacturing Corp., U.S.A. that injured Stephen G. Meylan were in the same defective

condition as when they left Kawasaki Motors Manufacturing Corp., U.S.A.'s control and custody.

73. As a direct and proximate cause of the defective nature of the subject products, and Defendant's failure to warn of the defects, Plaintiff Stephen G. Meylan has suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. These losses are permanent and continuing in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff Stephen G. Meylan demands judgment against Defendant Kawasaki Motors Manufacturing Corp., U.S.A. for compensatory damages, costs, interest and any further relief this Court deems just and proper.

## COUNT VI

### NEGLIGENCE AGAINST KAWASAKI MOTORS MANUFACTURING CORP., U.S.A.

74. Plaintiff Stephen G. Meylan adopts and restates paragraphs 1 through 21 as though fully set forth herein.

75. When purchased and used by Stephen G. Meylan, the subject products were in their original state and in the same defective condition that they were in when Kawasaki Motors Manufacturing Corp., U.S.A. sold or delivered them.

76. At all times relevant, Stephen G. Meylan used the subject products for their intended purpose and as directed. The subject products were at all times properly maintained, tested, and used by Stephen G. Meylan.

77. At all times relevant, Defendant Kawasaki Motors Manufacturing Corp., U.S.A. undertook activities to aggressively advertise, market, and sell the subject products.

78. Kawasaki Motors Manufacturing Corp., U.S.A. as the manufacturer, seller or distributor of the subject products, owed a duty to Plaintiff to exercise reasonable care. That duty included,

but was not limited to, exercising reasonable care by:

    a. inspecting the subject products to ensure that they were reasonably safe and free from defects;

    b. adequately testing the subject products;

    c. adequately warning of the subject products' dangerous propensities;

    d. warning of any health hazards or dangers associated with the use of the subject products; and

    e. using reasonable care in testing, monitoring, distributing and selling the subject products.

79. Kawasaki Motors Manufacturing Corp., U.S.A.., as the manufacturer, seller or distributor of the subject products, breached its duties owed to Plaintiff by negligently and carelessly:

    a) failing to inspect the subject products to ensure that they were reasonably safe and free of defects;

    b) failing to adequately warn of the subject products' dangerous propensities;

    c) failing to monitor the subject products and their uses in the scientific, medical community and the general population;

    d) failing to warn of any health hazards or dangers associated with the use of the subject products; and

    e) failing to use reasonable care in testing, monitoring, distributing, and selling the subject products.

80. Kawasaki Motors Manufacturing Corp., U.S.A.. knew or should have reasonably foreseen that its wrongful acts and omissions would injure Plaintiff.

81. As a direct and proximate result of the acts and omissions of Defendant Kawasaki Motors Manufacturing Corp., U.S.A., as described herein, Plaintiff Stephen G. Meylan has suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. These losses are permanent and continuing in nature and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff Stephen G. Meylan demands judgment against Defendant Kawasaki Motors Manufacturing Corp., U.S.A. for compensatory damages, costs, interest and any further

relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable as a matter of right.

DATED this 17th Day of June, 2004.

_____
DANIEL A. CARLTON
Fla. Bar No. 096372
2831 Ringling Blvd.
Bldg. C, Suite 111
Sarasota, FL 34237
(941) 365-5447
Attorney for Plaintiff